## Comly's Estate.

*Wills—Probate—Undue influence—Fraud—Evidence—Inquiry as to property—Scrivener.*

1. On an application for an issue *devisavit vel non*, inferences of fraud and undue influence are not to be lightly drawn from the evidence, nor to be drawn at all if there be a reasonable explanation of the occurrence.

2. An issue *devisavit vel non*, where undue influence is alleged, will not be granted where the testimony of the contestant rests on hearsay and self-serving inferences.

3. Where testatrix gave her estate to a friend and knew what she was doing in executing her will, it is no ground for granting an issue *devisavit vel non* on the ground of undue influence that the scrivener did not, when drawing her will, inquire as to her property or relatives.

Appeal from register and exceptions to opinion of presiding judge.  O. C. Phila. Co., Jan. T., 1926, No. 419.

*Clarence F. Sterner* and *Robert T. McCracken*, for exceptant.

*Joseph R. Embery*, contra.

HENDERSON, J., Oct. 20, 1926.—We have read carefully the record, the able briefs of counsel for the exceptant and for the proponent, and the opinion of the presiding judge—Thomas J. Baldrige, President Judge of the 24th Judicial District, specially presiding—and we are convinced he has properly disposed of this appeal.

Any testimony of alleged mental impairment was so completely rebutted by the witnesses for the proponent that no jury would be permitted to indulge in such an inference. The testimony relating to undue influence was practically *nil*. It rested on hearsay and self-serving inferences. Inferences of fraud are not to be lightly drawn, nor drawn at all if there be a reasonable explanation of the occurrences. For instance, it is alleged that the decedent's friends were kept away from her. Maud Milner testified, when she called to see the decedent, that she found the door locked. Surely a front door may be kept locked; and it does not help for Maud Milner to swear that she "knew that she had better stay out." Lizzie Elliott testified that the decedent told her

### Comly's Estate.

when her (the decedent's) sister died that people would not call to see her; she called and found the door locked—"the only implication to be drawn from this is that it was proponent who locked the door." This is a violent inference, one that may not properly be drawn without excluding every other possibility of locking the door; but let us assume it is true—were there not occasions when an ill person may command and require privacy?

Maud Milner testified the decedent told her she had torn up the first will and said she was angry at her nephews because they wrote her she should communicate with them through brother members of the lodge. As this letter was read to the decedent by the proponent, the suggestion is made by this witness that the proponent manufactured this idea to turn the decedent against her nephews. Some letters between the decedent and contestants are in evidence. Under date of March 23, 1925, the decedent wrote J. R. Comly, one of the contestants (page 160), that a friend told her that a Mason had a letter from him inquiring about the decedent, and in a letter (page 122) to the decedent from J. R. Comly, under date of Aug. 23, 1905, he said: "I will again request Mr. Hipple, the Master of Frankford Lodge, to call and you may feel free to confide in him and request anything of him." Thus it appears that this insinuation against the proponent is gratuitous.

It is probably true that the nephew was hoping, through his friend, Mr. Hipple, to render some service to the decedent, and it may be that she was in error in misinterpreting this message. Be that as it may, at least it cannot be said that the proponent was in any wise responsible for the misunderstanding.

Maud Milner testified that the decedent said to her: " 'Maud I have made another will, I tore up the first will.' I said 'What made you do that?' She said 'Sometimes you are made to do things you don't want to' and again she said, 'I was provoked at the boys for writing that letter saying that they didn't want any communications only through brother members of the lodge.' "

Stress was laid on this statement as evidence of coercion, but when the explanation of the decedent is considered, it appears that that was her way of saying that the actions of the nephew had forced her to do what she hesitated to do. Furthermore, there is nothing to connect the proponent with the alleged coercion.

The exceptant's brief has urged with great force that, under all the facts of this case, a confidential relation existed between the decedent and the proponent. The presiding judge found that the relation was a friendly one, and the record certainly shows that the proponent was a friend in need; she scarcely could have done more for a sister or a mother.

Without deciding the question, however, it may be assumed that the relation partook of a confidential nature; even under this assumption an issue should not be awarded, because the burden has been completely carried. In the preceding June, Mr. Embery had drawn an earlier will for the decedent in which she left one-half of her estate to these contestants, one-fourth to the proponent and one-fourth to Father Ward. Mr. Embery testifies that at that time he inquired as to the size of her estate, and who her next of kin were. Her mental condition was then undoubted; she was familiar with her next of kin and with her estate. Mr. Embery saw no reason for repeating these questions when he took the instructions for the later will in September. Her mental capacity at that time has been so completely established that a verdict against it would not be permitted to stand. Through Miss Milner, we learn that she recently knew of her family, the contestants, and gave her reason for cutting them off.

It is urged that an issue should be submitted to a jury because the scrivener at the time of drawing the will in September had not inquired as to her property; but this was not necessary.

In Leisey's Estate, 280 Pa. 533, 539, Mr. Justice Simpson, speaking for the Supreme Court, said: " 'If a testator designs to give the whole of his estate to a stranger, to the exclusion of his . . . relations, it is not necessary that he should have a recollection of the property he intends to dispose of, or of the persons who are related to him. Distribution not being the thing attempted, a competency to distribute is not the test of mental capacity:' Stevenson's Exec'r v. Stevenson, 33 Pa. 469. What he was doing was probably one of the simplest things of even his plain and unobstrusive life, and, hence, the only applicable test was, Did he know and understand the business in which he was engaged at the time he executed this easily understood gift to the person who had been and was being kind and helpful to him in his hour of need?"

How strictly applicable this language is to the instant case. Did this old testatrix understand the business in which she was engaged? The testimony that she did is so clear that a jury would not be permitted to find to the contrary. In this connection, it should be pointed out that there is no evidence of solicitation or procurement, or even that the proponent's advice was sought and given. She was not present when the instructions were given, nor when the will was executed, and probably was not even in the house, although this last fact is not affirmatively shown. Mr. Embery was the testatrix's own attorney and was acting for her alone. The proponent, a woman of about fifty-eight years of age, had known the decedent her whole life; she lived nearby, and when the decedent was taken down with what proved to be her last illness, this proponent was a friend indeed, doing, as is admitted, practically everything for her.

The exceptions are dismissed and the opinion of the presiding judge is confirmed absolutely, and the record remitted to the Register of Wills.

GEST and THOMPSON, JJ., did not sit.